UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| **CHANELL WILLIAMS**<br>3142 Ibsen Ave<br>Cincinnati, OH 45209<br><br>Plaintiff,<br><br>-vs-<br><br>**ALCLEAR LLC**<br>1160 Dublin Road, Suite 400<br>Columbus OH 43215<br><br>Defendant. | **Case No:** 2:24-cv-47-DCR<br><br>**Judge:** |

---

## COMPLAINT WITH JURY DEMAND

---

Chanell Williams states the following for her Complaint against AlClear, LLC:

### INTRODUCTION

1.      This action arose after Defendant engaged in discriminatory employment practices against an employee who served the company without incident until she complained about sexual harassment. Ms. Williams made internal complaints regarding improper treatment. These complaints were met with immediate hostility. Likewise, within months of reporting her supervisor for sexual harassment Defendant terminated Ms. Williams.

### PARTIES

2.      Plaintiff Chanell Williams ("Ms. Williams" or "Plaintiff") is a resident of Cincinnati, Ohio. Plaintiff's claims arose out of an employment relationship with Defendant in Hebron, Kentucky.

1

3. AlClear, LLC ("AlClear" or "Defendant") is a foreign limited liability company registered with the Ohio Secretary of State doing business in Hebron, Kentucky.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Ms. Williams asserts claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII").

5. Ms. Williams also states claims under the laws of the state of Kentucky. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution. Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

6. Venue is proper in this Court because the transactions and occurrences and injuries occurred in Hebron, Kentucky.

**BACKGROUND FACTS**

7. Ms. Williams began working for Defendant in March 2022 as an ambassador.

8. Defendant quickly recognized Ms. Williams superior work ethic and promoted her to senior ambassador in 2022.

9. Troy Burd, General Manager would regularly make sexual comments towards female employees, especially Ms. Williams.

10. Mr. Burd would make comments towards Ms. Williams, calling her names like "baby".

11. Ms. Burd would call Ms. Williams "baby" regularly.

12. Mr. Burd would regularly invite Ms. Williams out for drinks, despite her always rejecting his advances.

13. Mr. Burd even showed Ms. Williams a text from his wife stating, "are you and Chanell fucking?"

14. Tameka Oden an ambassador would also sexually harass Ms. Williams.

15. Ms. Oden would regularly make comments about how she would like to "fuck" Ms. Williams.

16. Ms. Oden would also make comments about how Ms. Williams "ass is getting thick."

17. Manager Thomara Briscoe would tell Ms. Oden to halt her actions but Ms. Oden continued to harass Ms. Williams.

18. In March 2023, Ms. Willaims complained to Mr. Burd about him and Ms. Oden's constant advances and sexual statements.

19. Mr. Burd blew Ms. Williams off, making it evident he had no intention of correcting his or Ms. Oden's actions.

20. Ms. Williams then went to manager Alexis Jones to complain about sexual harassment, to which Ms. Jones said she would attempt to take corrective action, but it would not happen overnight.

21. Corrective action was never taken.

22. Following her complaint, Mr. Burd began reducing Ms. William's job duties.

23. During this period, Mr. Burd and Ms. Owen continued to sexually harass Ms. Williams, making comments about her body and calling her names such as "baby".

24. Again, Ms. Williams complained to Mr. Burd about his and Ms. Oden's sexual harassment.

25. Mr. Burd blew Ms. Williams off again, making it clear that he had no intention of changing his actions or reprimanding Ms. Oden.

26. Shortly after this on April 8, 2023, Ms. Williams contacted Defendant's sexual assault hotline and filed a claim against Mr. Burd and Ms. Oden.

27. After Ms. Williams filed a claim with the sexual assault hotline Mr. Burd took away almost all of her job duties in retaliation.

28. Ms. Williams job duties prior to her complaints included:

   a. Supporting manager in the training and development of new and existing employees.

   b. Resolve travelers matters.

   c. Provide detailed and accurate recaps sent to all local leadership following her shift.

   d. Give corrective coaching when needed.

   e. Adhere to performance expectations set by management in regard to sales goals.

   f. Adhere to security protocol procedures.

   g. Complete daily technology maintenance.

29. Ms. Williams job duties following her filing a claim with the sexual assault hotline only included going onto the floor and selling, which is the job duty of an ambassador not a senior ambassador.

30. Ms. Williams was ordered to stay on the floor and not come in to assist the lane no matter how bad it got.

31. It was evident that Mr. Burd was attempting to isolate Ms. Williams.

32. During this time Mr. Burd continued to sexually harass Ms. Williams verbally.

33. Mr. Burd even became physical, putting his hand on the small of Ms. Williams back at times.

34. The week of April 9, 2023, Ms. Williams contacted the sexual assault hotline again to inquire on why they have not contacted the witnesses she mentioned or taken corrective action response to her complaint.

35. The sexual assault hotline informed Ms. Williams that they only take down notes and forward the information to their contact which is generally the HR Department.

36. On April 12, 2023, Ms. Williams was issued a verbal write up from Mr. Burd.

37. Around this time period Ms. Williams was sick for two days and had to call out once and leave early the other day.

38. On both days that Ms. Williams was absent she explained that she was sick to her superiors.

39. On April 17, 2023, Ms. Williams was issued a final written write up from manager Jaylin and Mr. Burd for having to call out of work on day and leave early the other day.

40. Both absences were on the days that Ms. Williams called out for being sick.

41. Following the write up, Ms. Williams contacted Marshal Rake in the HR department to complain that Mr. Burd was retaliating against her for filling a complaint with the sexual assault hotline.

42. Mr. Rake said that he would look into the matter, but no corrective action was ever taken.

43. On April 29, Mr. Burd issued Mr. Williams a final warning because of an anonymous email complaining about her.

44. Immediately following this Ms. Williams contacted Mr. Rake via phone call and email to complain that Mr. Burd was retaliating against her for filing a complaint with the sexual assault hotline.

45. On April 30, Ms. Williams complained to Mr. Burd that he was retaliating against her for complaining about sexual harassment.

46. Mr. Burd responded with immediate hostility, demanding that Ms. Williams turn in her badge.

47. That same day, Ms. Williams contacted the HR department again to complain about retaliation for complaining about sexual harassment.

48. However, no corrective action was even taken by Defendant's HR department.

49. On May 18, 2023, Defendant terminated Ms. Williams for a security infraction.

50. It is upon information and belief that Ms. Williams never committed a security infraction.

51. Defendant's reason for terminating Ms. Williams is bogus.

52. Defendant drafted false documentation regarding Ms. Williams. Defendant's manager Thomara Briscoe knows that Troy would create false documentation and narratives.

53. Following her termination, Ms. Oden was promoted to Ms. Williams old position, senior ambassador.

54. Ms. Williams suffered damages and will continue to suffer damages in the future because of Defendant's actions.

## CLAIMS

### COUNT I
### SEXUAL HARASSMENT UNDER TITLE VII

55. Ms. Williams restates and incorporates all paragraphs.

56. Ms. Williams is a woman.

57. Ms. Williams was at all times qualified for her position.

58. Defendant's conduct created a hostile work environment based on Ms. William's gender.

59. Defendant made deliberate and repeated unwanted offensive comments towards Ms. Williams.

60. In fact, Defendant's agents and/or employees would call Ms. Williams names like "baby", make comments about how they would like to "fuck" her, and even inappropriately touch her.

61. Ms. William's belief that Defendant's behavior constituted sexual workplace harassment was reasonable and in good faith.

62. Troy and Tameka would speak sexually in their microphones and everyone heard this.

63. Defendant's agents and/or employees actions were severe and pervasive enough to create a hostile work environment.

64. Ms. Williams complained to Defendant's agents, employees, and HR department on multiple occasions about sexual harassment and retaliation.

65. Ms. Williams was scared to go to Alex who was over Marshal head of HR because she and Troy where best friends.

66. Defendant had knowledge of Ms. Williams complaints of sexual harassment but took no corrective action.

67. Ms. Williams was humiliated, economically damaged, and suffered emotional distress.

68. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Williams.

69. As a direct and proximate result of the discrimination, Ms. Williams has sustained, and will continue to sustain, economic, and emotional injuries.

70. Ms. Williams is entitled to all damages and injunctive relief permissible under Title VII.

71. As a result of Defendant's actions, Ms. Williams has been harmed.

## COUNT II
## RETALIATION UNDER TITLE VII

72. Ms. Williams restates and incorporates all paragraphs.

73. Ms. Williams was qualified for her position.

74. Ms. Williams made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful sexual harassment.

75. Ms. Williams reported Defendant's unlawful behavior to her supervisor and to Defendant's HR department.

76. Ms. Williams belief that Defendant's behavior constituted sexual harassment was reasonable and in good faith.

77. As a result of Ms. Williams's complaints, Defendant's agents and employees took materially adverse actions against her, including reprimands by her supervisors, and eventually termination.

78. Defendant's adverse actions constituted retaliatory workplace sexual harassment.

79. Within days of complaining about sexual harassment, Defendant terminated Ms. Williams.

80. Ms. Williams was humiliated, economically damaged, and suffered emotional distress.

81. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Williams.

82. As a direct and proximate result of the discrimination, Ms. Williams has sustained, and will continue to sustain, economic, and emotional injuries.

83. Ms. Williams is entitled to all damages and injunctive relief permissible under Title VII.

84. As a result of Defendant's actions, Ms. Williams has been harmed.

## COUNT III
## SEXUAL HARASSMENT UNDER KRS §35.679

85. Ms. Williams restates and incorporates all paragraphs.

86. Ms. Williams is a woman.

87. Ms. Williams was at all times qualified for her position.

88. Defendant's conduct created a hostile work environment based on Ms. William's gender.

89. Defendant made deliberate and repeated unwanted offensive comments towards Ms. Williams.

90. In fact, Defendant's agents and/or employees would call Ms. Williams names like "baby", make comments about how they would like to "fuck" her, and even inappropriately touch her.

91. Ms. William's belief that Defendant's behavior constituted sexual workplace harassment was reasonable and in good faith.

92. Defendant's agents and/or employees actions were severe and pervasive enough to create a hostile work environment.

93. Ms. Williams complained to Defendant's agents, employees, and HR department on multiple occasions about sexual harassment and retaliation.

94. Defendant had knowledge of Ms. Williams complaints of sexual harassment but took no corrective action.

95. Ms. Williams was humiliated, economically damaged, and suffered emotional distress.

96. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Williams.

97. As a direct and proximate result of the discrimination, Ms. Williams has sustained, and will continue to sustain, economic, and emotional injuries.

98. Ms. Williams is entitled to all damages and injunctive relief permissible under KRS §35.679.

99. As a result of Defendant's actions, Ms. Williams has been harmed.

## COUNT IV
## RETALIATION UNDER KRS §344 et seq

100. Ms. Williams restates and incorporates all paragraphs.

101. Ms. Williams was qualified for her position.

102. Ms. Williams made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful sexual harassment.

103. Ms. Williams reported Defendant's unlawful behavior to her supervisor and to Defendant's HR department.

104. Ms. Williams belief that Defendant's behavior constituted sexual harassment was reasonable and in good faith.

105. As a result of Ms. Williams' complaints, Defendant's agents and employees took materially adverse actions against her, including reprimands by her supervisors, and eventually termination.

106. Defendant's adverse actions constituted retaliatory workplace sexual harassment.

107. Within days of complaining about sexual harassment, Defendant terminated Ms. Williams.

108. Ms. Williams was humiliated, economically damaged, and suffered emotional distress.

109. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Williams.

110. As a direct and proximate result of the discrimination, Ms. Williams has sustained, and will continue to sustain, economic, and emotional injuries.

111. Ms. Williams is entitled to all damages and injunctive relief permissible under KRS §344.

112. As a result of Defendant's actions, Ms. Williams has been harmed.

## COUNT IV
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII

113. Ms. Williams restates and incorporates all paragraphs.

114. Ms. Williams is a woman.

115. Ms. Williams was at all times qualified for her position.

116. Ms. Williams was subjected to unwelcome harassment from Defendant's agents and/or employees.

117. Defendant's agents and/or employees made deliberate and repeated unwanted offensive comments towards Ms. Williams.

118. In fact, Defendant's agents and/or employees would call Ms. Williams names like "baby", make comments about how they would like to "fuck" her, and even inappropriately touch her.

119. Ms. William's belief that Defendant's behavior constituted sexual workplace harassment was reasonable and in good faith.

120. Defendant's agents and/or employees actions were severe and pervasive enough to alter the conditions of her employment and create an abusive atmosphere.

121. Ms. Williams complained to Defendant's agents, employees, and HR department on multiple occasions about sexual harassment and retaliation.

122. Defendant had knowledge of Ms. Williams complaints of sexual harassment but took no corrective action.

123. Ms. Williams was humiliated, economically damaged, and suffered emotional distress.

124. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Williams.

125. As a direct and proximate result of the discrimination, Ms. Williams has sustained, and will continue to sustain, economic, and emotional injuries.

126. Ms. Williams is entitled to all damages and injunctive relief permissible under Title VII.

127. As a result of Defendant's actions, Ms. Williams has been harmed.

**WHEREFORE**, Ms. Williams respectfully requests that this Court find for her and award her the following:

    a. Compensatory damages;

    b. Reinstatement;

    c. Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions;

    d. Statutory damages;

    e. Interest;

    f. Punitive damages;

    g. Attorney fees;

    h. Costs;

    i. Litigation expenses; and

    j. All other relief this Court deems proper.

Respectfully Submitted,

**/s/ Robert L. Thompson**
Robert L. Thompson (0098126)
THOMPSON LEGAL LLC
10529 Timberwood Circle, Unit B
Louisville, Kentucky 40223
P: 513-780-5985
F: 513-780-5988
Robert@RthompsonLegal.com

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

*/s/ Robert L. Thompson*
Robert L. Thompson